**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF GEORGIA, <br>   Plaintiffs, <br>                 v. <br> DEKALB COUNTY, GEORGIA, <br>   Defendant. | Civil Action No. <br> 1:10-cv-04039-SDG |

## ORDER

This matter is before the Court on Defendant DeKalb County, Georgia's motions for consent-decree modification [ECF 158] and appointment of a special master [ECF 159].[1] For the following reasons, the former is **DENIED** without prejudice, and the latter is **DEFERRED** pending ongoing negotiations.

First, consent-decree modification: The consent decree at issue was entered in 2011 to resolve Clean Water Act claims brought by the United States of America and the State of Georgia for the County's sanitary sewer overflows,[2] and has already been modified once to accommodate "delays and performance problems" in the County's implementation.[3] The County now moves for another modification under Federal Rule of Civil Procedure 60(b), on the grounds that

---

[1] The County has also moved for an evidentiary hearing on the issue of consent-decree modification. ECF 171. That motion is denied.

[2] ECF 39, at 4–8.

[3] ECF 83, at 5.

1

rehabilitation of its sewer system has been more onerous than expected, and that payment of millions of dollars in stipulated penalties would be detrimental to the public.[4]

"A party seeking to modify a consent decree has a high hurdle to clear and the wind in its face." *Sierra Club v. Meiburg*, 296 F.3d 1021, 1034 (11th Cir. 2002). The ultimate question for the Court is not whether "it is no longer *convenient*" for the County to live with the terms of the consent decree, *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992) (emphasis added), but whether it is "no longer *equitable*" to apply the Court's judgment prospectively, FED. R. CIV. P. 60(b)(5) (emphasis added). To show that relief under Rule 60(b) is warranted, the County must satisfy both prongs of the so-called *Rufo* test: it must demonstrate (1) that there has been "a significant change either in factual conditions or in law," and (2) that "the proposed modification is suitably tailored to the changed circumstance." *Meiburg*, 296 F.3d at 1033 (quoting *Rufo*, 502 U.S. at 384, 391).

The Court has doubts about the sufficiency of the County's showing under the first *Rufo* prong. Chief among the "significant changes" that the County points to are the worse-than-expected condition of its sewer system[5] and the harder-than-

---

[4]   ECF 159, at 1–2.

[5]   *Id.* at 12 n.8.

expected work of remediating it.[6] It should be lost on no one that the County pointed to the same "change[s]" when it asked for (and obtained) consent-decree modification the first time: a sewer system with "more capacity-related limitations than initially anticipated," and rehabilitation projects that were "more complex" and required "significantly more resources than initially anticipated."[7] These changes appear less significant the second time around. In addition, many of the changes cited by the County were explicitly foreseen. For example, that the County would need to construct a new trunk sewer instead of rehabilitating an existing one, a fact purportedly "discovered" after the 2021 modification,[8] had in fact been "anticipated" back in 2020.[9] Likewise, local pushback to the construction of wastewater storage facilities in residential areas, which purportedly "arose" after the modification,[10] had in fact been identified as a risk factor several months prior to it.[11] Where, as here, "a party relies upon events that actually were anticipated at the time it entered into a decree," modification of that decree is ordinarily unwarranted. *Rufo*, 502 U.S. at 385.

---

[6]   *Id.* at 14.

[7]   ECF 76, at 3–4.

[8]   ECF 159, at 11.

[9]   ECF 125-1, at 29.

[10]  ECF 159, at 13.

[11]  ECF 125-1, at 115.

The County alternatively argues that the first *Rufo* prong is satisfied because enforcement of the consent decree's stipulated penalty provisions would impose an "enormous financial burden" on the County's ratepayers to the detriment of the public interest.[12] On one hand, it is true that *Rufo* countenances consent-decree modification where "enforcement of the decree without modification would be detrimental to the public interest." 502 U.S. at 384. On the other hand, there is a clear factual distinction between the case that *Rufo* cited for that proposition—where enforcement of the existing consent decree would have "loose[d] 500 accused felons, most with felony records," into the public, *Duran v. Elrod*, 760 F.2d 756, 761 (7th Cir. 1985)—and this case, where enforcement would only require the County to pay contractually negotiated penalties that it agreed at the time were "in the public interest."[13] Furthermore, in this case, there is a countervailing public interest in incentivizing the County to stanch the overflow of untreated sewage into its communities as expeditiously as possible.[14]

There is no need to decide whether the County has met *Rufo*'s first prong now, however, because it has clearly failed to meet the second: its proposed

---

[12] ECF 159, at 16.

[13] ECF 83, at 9; *accord* ECF 76, at 8.

[14] *See* ECF 140, at 39 ("I don't know any other way to incentivize the people who are in a position to make this a priority than with real dollars.").

consent-decree modification is not "suitably tailored" to the circumstances of this case. In particular, the County's proposal of *zero* dollars in civil penalties[15] is an unequivocal non-starter. As undersigned told the County during the April 30 status conference, consent-decree modification is "not a get-out-of-jail-free card."[16] Undersigned also said then, and reiterates now, that "[t]here will be a consequence for coming back now and asking for another modification."[17] Any civil penalty the County pays in connection with yet another modification "[is] not going to be zero."[18] It cannot come as a surprise, given what the County has already heard from the Court, that its proposal for zero dollars in civil penalties is rejected out of hand. Indeed, such a proposal engenders some concern by undersigned as to whether the County is approaching its request for modification—without which it could be on the hook for $115 million in stipulated penalties[19]—with the requisite degree of seriousness and urgency that the residents of the County deserve. At the very least, the County's proposal reflects a failure to "read the [court]room" during the April 30 status conference.

---

[15]   ECF 159, at 22.
[16]   ECF 157, at 67.
[17]   *Id.*
[18]   *Id.*
[19]   *Id.* at 45.

The Court tends to agree with the United States that, as a pragmatic matter, "the County's chronic failures mean that a further modification [will be] necessary."[20] And the Court agrees that any proposed consent-decree modification should in the first instance be negotiated by the parties, with all current deadlines intact.[21] The Court expresses no opinion about what specific terms the modification should include, save to again stress the importance of assessing a civil penalty that adequately reflects the culpability of the County under the factors enumerated in 33 U.S.C. § 1319(d). The County's Rule 60(b) motion is accordingly denied without prejudice.

Moving on to special-master appointment: The Court has been in dialogue with the parties for several months about the potential appointment of a special master under Federal Rule of Civil Procedure 53, in light of the technical nature of the factual issues in this case, with the understanding that any costs associated with the appointment would be borne by the County.[22] The County now formally moves for special master appointment to aid the Court in reviewing proposed consent-decree modifications, facilitating dispute resolution between the parties,

---

[20]  ECF 163, at 22.

[21]  *Id.* at 23; ECF 165, at 22–23.

[22]  ECF 140, at 10–11, 33; ECF 157, at 20–21, 27, 47–50, 56–66.

and ensuring implementation of the consent decree.[23] The United States and Georgia oppose the motion, arguing that a special master will only "delay compliance and add costs" to an already behind-schedule and over-budget remediation[24] and, in any case, is inappropriate here under Rule 53.[25] Each side's points are well taken. The Court will continue to evaluate the need for special-master appointment pending the parties' modification negotiations. A ruling on the County's Rule 53 motion will, for now, be deferred.

The County's motion for consent-decree modification [ECF 159] is **DENIED** without prejudice; its motion for an evidentiary hearing [ECF 171] is **DENIED** without prejudice;[26] and its motion for special-master appointment [ECF 158] is **DEFERRED**.

The parties are **DIRECTED**, within 14 days of this Order, to file a notice indicating their positions on whether appointment of a private mediator (at the County's expense) would be helpful for the parties' negotiations. Regardless of whether the answer is in the affirmative or negative, the parties should include in their notice a recommendation of up to three proposed mediators. Undersigned

---

[23]   ECF 158, at 4.

[24]   ECF 164, at 5.

[25]   *Id.* at 4.

[26]   *Supra* note 1.

7

will take the parties' positions into account in determining whether to order mediation and, if so, with whom, but the parties' positions and recommendations will not be dispositive.

The Court will set a status conference in approximately 60 days by separate order.

**SO ORDERED** this 22nd day of September, 2025.

                                              Steven D. Grimberg
                                       United States District Judge